to the first item on our calendar, which is Leon Silverman versus Teamster Local 210 and others. Thank you. Council, you may take the podium. Thank you, Your Honor. Good morning. May it please the court, my name is Roland Acevedo and I represent the defendant appellants, the Teamster Local 210 Affiliated Health and Insurance Fund. I'm joined at council table by Thomas A Thompson. This case has a protracted 11 year history before the court that centers basically around the interpretation of a single paragraph in collective bargaining agreements. This is the second time this case has been before this court. The first time the case was before this court- Assume that we know the procedural history. Thank you, Your Honor. Our position is that on remand, the district court exceeded the mandate of this court. The mandate of this court directed that on remand, the district court was to consider whether to exercise supplemental jurisdiction over the first two claims construed as alleging state law breach of contract. In a footnote, this court cautioned the district court that treating the remaining claims as contract claims rather than ERISA claims was no mere formality because the 210 may enjoy additional defenses to the state law claims, including preemption. Now, that's exactly what the appellants did. They moved to dismiss the state law claims on the preemption grounds under the Labor Management Relations Act, section 301. The court granted that motion and then allowed the UMMF, the Union Mutual Medical Fund- Did we forbid that? Did we prohibit it? I think you did, Judge. I think the language in the first opinion limited the district court's consideration to state law breach of contract claims. There were no more federal claims left in the amended complaint. That's why this court said on remand, you should determine whether to exercise supplemental jurisdiction. And didn't we also say in any other issue that comes up, we usually have language like that? The language in the court said you didn't take a position on any of the other issues. Which meant they were open and not foreclosed by the mandate. Even if that's the case, Your Honor, we submit that the court still erred when it granted summary judgment on the LMRA section 301 claims for two reasons. Number one, collective bargaining agreements are not ordinary contracts for service and goods. Section 301 claims are limited to the signatories of those collective bargaining agreements. That's contrary to what we said in Brown, where there was not a signatory. But we nevertheless said that the union was a actual party. Actually, Brown supports our position, Judge. There are only two parties to collective bargaining agreements, employers and the union. In Brown, the court held that the employer was liable under the contract based on his conduct of complying with the terms of those collective bargaining agreements for six full years. On a monthly basis, the employer would submit contributions with remittance reports. Those remittance reports said they submitted pursuant to the collective bargaining agreements. Now, ERISA section 302 doesn't require an actual signature on a collective bargaining agreement. It just requires that the agreement be written and the terms be explained. But in the context of the labor world, the union labor world, there are only two parties to collective bargaining agreements. The employers who make the contributions and the unions who represent the members. And what about the third party beneficiary, which UMMF was to those contracts? Even if this court determines that- The district court found, didn't they? We contend that that was a mistake under New York law. But even if you assume they are a third party beneficiary, this court's decision in Tuvia prohibits third party actions against union funds. And that's exactly what this is. The UMMF sued a non-signatory to the agreement, the 210 fund, and got a judgment. Section 301B prohibits that. If we were to determine that the 210 fund, your client was an actual party to the CBAs, then Tuvia would be an opposite, is that right? No, that wouldn't be correct. Why isn't that correct? There are two subdivisions to section 301. 301A basically says that you have to be a signatory to the agreement or a party judge. And then section 301B dovetails with section 301 because it says you can't have third party actions against union funds. Why? Because of 301A, the only parties to a collective bargaining agreement are the employers and the union. If this case stands, it will be, at least in all of my research, the first case in the nation. There are no cases cited in the district court's decision or the UMF's papers that holds a fund accountable for contributions from an employer when they're not even a party to the agreement. Now, the important thing to keep in mind is the offending parties here were the employers and the union. Yet they weren't sued. There's no question that the 210 fund did not amend the collective bargaining agreements. It couldn't, by law. The only two parties that could amend those were the employers and the union. Let me just ask two questions, just by way of, to try to clarify some things in the record. One of the things you argue is that the 210 fund assumed only some of the liabilities of allied funds, is that right? Do you make that argument? We make the argument that they only assume the obligation for ten cents, the ten cent pass through judge, because those contracts were amended before the 210 came into existence. So there is a tax form, there is our own prior decision that suggests, says, or say that 210 assumed all of the liabilities of allied fund. How do you explain those? That transfer agreement, when the two funds bifurcated, it was an asset transfer agreement, and that asset transfer agreement said the 210 fund was assuming the liability for any participants in the allied welfare fund, which was another benefit fund. We didn't, the 210 fund didn't take on any responsibilities across the board for the allied welfare fund. In addition, the district court found that the 210 fund was responsible based on its conduct. The only conduct it had in this case was to pass through the ten cents, because it didn't come into existence until June 2006. Was there any contractual obligations, any contracts between the 210 fund and UMM? No, there were no contractual obligations. They can't point to a single piece of paper that the 210 fund signed, that agreed to make contributions to the UMMF. The only basis for liability is based on the 210 fund's actions, and those actions only occurred after the change was made. Counsel, your time has expired. You've reserved three minutes for rebuttal. Yes, thank you, Your Honor. May it please the court. My name is Robert Kipnis. I represent the appellees, cross appellants, the Union Mutual Medical Fund and its trustees. As Mr. Acevedo has referred to, this case has spanned an inordinate amount of time. One thing, though, has not changed, and that is the contracts here at issue specifically provide that irrevocably and unconditionally money was going into the allied welfare fund, the predecessor fund for the local 210 fund, and out of that money, it was supposed to be irrevocably and unconditionally set to my clients, the trustees. We've been waiting for justice for 12 years. We've been litigating that extensively all the time. They have thrown up one obstacle after another, saying that they're not the proper party. They aren't the proper party. They received the money. They've had the money in their accounts for 12 years. They assumed all the contractual obligations of the allied welfare fund, as Your Honor has indicated, both by contract as well as by their own funds. Why are you not suing the contributing employers and the union? I mean, you can do whatever you want. Right. Well, to the contributing employers, it was a non-event to them. They're paying the same amount regardless. It was just the allocation of that. Now, that was done by the union, although, frankly, the record is unclear. Mr. Miranda was wearing various different hats. He was the president of the union. He was the trustee of the fund at the time as well. But inevitably, the unions would have said, we don't have the money. The money has been sitting in the account of the allied welfare fund, was transferred to the local 210 fund to the detriment of my clients and our beneficiaries. Now, the law is pretty clear also that we are clearly intended third-party beneficiaries to this, both by matter of contract law and as a matter of elemental fairness, too. Our opposing counsel say, if this decision prevails, it would be the only one ever recorded where a third-party beneficiary got funds? That's clearly not accurate in my estimation. Maybe I misstated his position. He'll tell us what I said, what the right answer is. There are numerous instances in which this court and other courts within the district have held third-party beneficiaries to be entitled to recover, including under CBAs as previously indicated with respect to, among others, the Brown versus Volante case and others, too. It does not matter that they were not signatories to these accounts. They clearly acted in accordance with it. And if they didn't feel that they were bound, then why continue to remit only ten cents out of the contribution of the $8 that was formerly done? And if they didn't feel that they were obligated by anything, why did they continue that over a period of years, even after the collective bargaining agreements were changed without our consent? Why did they even give you the ten cents? Exactly. They didn't know anything? Why did they give you that? I don't know. I don't have an answer for that. I believe they were obligated to remit to us the full $8 per employee per week. And I think that the Penn Plastic case aptly decides that, too. And there's reasons that the Penn Plastic case advance why that's applicable and why that's true. And that is exactly here, where you have retirees, my clients, who are the benefits of the fund, don't have a say in the conduct of the union. Also, the plans have a right to rely actuarially upon the specific contractual obligations. Basic contract law under the restatement says that you cannot change the terms of an agreement to the detriment of a third party beneficiary, such as my client's union mutual medical fund, without its consent, which was not obtained here. What about the mandate issue? Sure. That's what Mr. Acevedo led off with, and he's saying that the circuit, the first go around, just sent it back for the state law claims. That's it. There's nothing in this court's opinion that said that, that specifically limited that. And Judge Ramos specifically held on remand that he was considering it under state, whether to assert, whether those claims asserted claims under state law. Judge Jacobs, in his opinion, did include a footnote to the issue about whether or not there may have been ERISA preemption, which was never raised. The issue was raised, though, of LMRA preemption. And as Judge Ramos held, clearly this court must have contemplated that if there was an issue as to whether or not something was preempted, the court had to decide how to determine it appropriately. And given the years that this case has spanned, and given the issues have remained unchanged over this period of time. Whether you construe it under the LMRA, whether you construe it under state law, or whether you construe it under ERISA, it's all the same. It all looks to the restatement of contracts. My clients were third party beneficiaries of that agreement, which was assumed by the local 210 fund acting as a party. Actual party. Exactly. Because it received benefits from the collective bargaining agreement, but also with correlative rights, correlative obligations in addition to those rights, too. Have we ever affirmatively held that a judgment can be collected under section 301 from a benefit fund that is an actual party to a CBA? The cases that have been cited contrary wise, your honor, are those instances, and I think that's what my opposing counsel was referring to. Prohibiting that where the actual party was not the party that had committed the wrong. In this case, as in the Smith case and other cases too, and Tuvia rather, I'm sorry, and Dwayne Reed. Tuvia is what I've got in mind. Yeah, Tuvia. That's not the case here. The actual party that was holding on to the money is the party that we've sued. That's the local 210 fund. And there's absolutely ample authority to hold that they should be accountable for the funds that- Have we ever affirmatively held that a money judgment can be collected under section 301 against an actual party in that case? I don't believe it's foreclosed under any of the decisions. I gather your answer is no, we've never affirmatively held that. Against the party? No, certainly I believe that 301 allows a monetary recovery against the party as well, too. And that's what we're saying here, that- You're not getting my question. I'm sorry. Have we affirmatively held in any decision, any binding precedent, that a money judgment under 301 can be collected against an actual party from a benefit fund that's an actual party to a CBA? Your Honor, I'm not certain off the top of my head right now. I'm happy to look into it further and get back to you, Your Honor, about that. But I certainly don't believe that's foreclosed by 301. I think it's certainly contemplated by section 301. And we think that even if, however you characterize it as an equitable order or as a monetary judgment, they clearly have to be held accountable. And whether you characterize it as restitution or a monetary judgment, we get to the same point. They clearly have- You're characterizing it as a monetary judgment. It can be characterized initially it was done under ERISA and asking for an accounting. And that's what the district court had held. And the same law would be applicable here for them to account as an equitable remedy for the sums that they had improperly withheld and have held onto over this period of time. That would have an impact on prejudgment interest then, wouldn't it? I don't believe so, Your Honor. Well, the only impact- First of all, we believe that, as we argued in our cross appeal, that we don't think that this was preempted by the LMRA. We think we're entitled to a judgment under state law action, and which would entitle us to a breach of contract damages and interest under the LMRA. But regardless, I think that the purpose of prejudgment interest is to put the party in as good a position and to reflect the equities in the situation. And the equities are such here that they've held onto the money over a 12-year period of time to the detriment of our clients and our ever-aging beneficiaries. But just the calculation alone seems to be inflated, doesn't it? I mean, often what happens is a jury returns a verdict, right? And a damaging number of X. Right. And the tort went on for a decade. So you've got to figure out what is the starting point. But that's not here, right? Here you could have a spreadsheet, and you could probably pinpoint to the penny what the prejudgment interest is based on payments that should have been made that weren't. Right? Yes and no, Your Honor. I'm sorry to be evasive to that. But it occurred over periods of time when Mr. Miranda went out to the various employers and asked them to change the collective bargaining agreements. And those payments changed over a period of time, too. So the district court properly held that the starting point was going to be April of 2006. And in answer to Your Honor's question about the disproportionality, the fact is that it's been going on for 12 years. And that's what reflects. That's what the prejudgment interest amount reflects. Thank you very much, Your Honor. Counsel, Mr. Acevedo, you've got three minutes for rebuttal. Thank you, Your Honor. So there was a question during Mr. Kivney's presentation as to why the 210 fund continued to contribute the $0.10, because the 210 fund is merely an intermediary. And the contract was changed to say that the $8 should be lowered to the $0.10. So as an intermediary, they were merely following the contract. They're in the middle of this dispute. The parties that offended the UMMF and possibly violated the agreement were the employers and the union. Those are the parties that should have been sued. I don't know why they weren't sued, but my client, the 210 fund, was caught in the middle. That argument comes perilously close to validating the third party beneficiary argument that's being made. Well, it was interesting, I think, Judge, that they could not cite to a single case where a union fund has been held responsible in a third party action under section 301. And I submit that the district court didn't cite to any case either, because it doesn't exist. It can't exist. If that happens in this case, I cannot stress enough how it will change the union world and collective bargaining agreement and place it on its head. Let me tell you why. Because under their theory, every fund becomes a party to a collective bargaining agreement. So if they're a party and they don't like what the employers and the union do to lower contributions, the fund could say, you know what, I'm going to sue. What was the theory under which the 210 fund paid anything to the UMM? They were merely a conduit. They were complying with- Judge, under the collective bargaining agreement, I don't think there's a separate legal theory. They're merely complying with the terms of a contract. That contract being the collective bargaining agreements between the employer and the 210 fund. Now, Tuvier is actually exactly on point. If a fund's conduct in accepting contributions made it a party to the agreement where it could be sued, then those funds in Tuvier would have been liable. And this court I submit would have held differently. Because those funds, the pension and the health fund in Tuvier, accepted contributions. They did the same thing the 210 fund did here. But this court specifically held in Tuvier that that isn't enough. You can't on the 301 have a third party action against a union fund. And that's exactly what's happening in this case. Now, the other thing I want to touch on very briefly is Mr. Kipney's mentioned a few times restitution and equity. The ERISA claims were dismissed in this case. There is no equitable relief anymore. These are contracts essentially that are examined and analyzed under the restatement. The only remedies here are legal remedies, not equitable remedies. My time's up. Thank you. Thank you. Thank you both. Interesting case.